OSTERHAUS *v.* CREVISTON ET AL.

[No. 8,976. Filed February 24, 1916. Rehearing denied June 8, 1916.]

1. APPEAL.—*Perfection of Appeal.—Assignment of Errors.—Failure to Amend.*—Where an appellant died pending submission of the cause and his heirs were substituted as appellants on notice served on appellees, the appeal will not be dismissed because of the failure to formally amend the assignment of errors to correspond with the order of substitution.   p. 386.

2. FRAUDS, STATUTE OF.—*Application.—Parol Gift of Lands.*—A parol gift, or a verbal contract for the sale of land, may be taken

out of the operation of the statute of frauds by clear and definite proof of the contract or gift, followed by full possession, use and control of the land. p. 389.

3. FRAUDS, STATUTE OF.—*Parol Gifts.—Evidence.*—While a parol gift of land, and the facts relied on to take the case out of the statute of frauds, must be clearly established by satisfactory proof yet the evidence need not be of any particular kind or class and the ultimate fact of gift may be inferred from facts and circumstances proven by the evidence, if they are sufficient. p. 389.

4. SPECIFIC PERFORMANCE.—*Right to.—Parol Gift of Land.*—Where a donee has accepted a parol gift of land, has taken possession, made permanent and valuable improvements thereon and has discharged all his obligations in relation thereto, he is the equitable owner of the land and may enforce an agreement to convey or may quiet his title to the land. p. 389.

5. GIFTS.—*Action.—Gifts by Parol.—Sufficiency of Evidence to Establish.*—Where, in an action to establish ownership of land claimed by defendants as a parol gift, there was evidence tending to show that the donor said he intended to buy a farm for the defendants and after he bought stated that it was their farm, and it was indisputably established that they took possession and lived thereon continuously, cleared the land, paid the taxes and made permanent improvements, though there was some controversy as to who paid for the same, the evidence was sufficient to establish an absolute gift to defendants and they were entitled to a deed. p. 390.

From Huntington Circuit Court; *Samuel E. Cook*, Judge.

Action by Harry W. Osterhaus against Dena Creviston and others, in which defendants Creviston cross-complained. From a judgment for cross-complainants, the plaintiff appeals. *Affirmed.*

*John Q. Cline, Claude Clyne, Ulysses S. Lesh* and *Schorr & Wessellman*, for appellant.

*Fred H. Bowers, Milo N. Feightner, George M. Eberhart* and *Sumner Kenner*, for appellees.

FELT, P. J.—Appellant, Harry W. Osterhaus, brought suit against appellees, Dena and Jacob W. Creviston et al., for partition of thirty acres of real estate in Huntington County, Indiana. In substance it was alleged that, on February 3, 1913,

Harry Osterhaus died intestate, the owner of said real estate, leaving as his only heirs at law appellant and appellee, Dena Creviston, each of whom was alleged to be the owner of the undivided one-half of said real estate; that Jacob W. Creviston was the husband of Dena Creviston, and the other defendants to the suit were alleged to have some claim or lien on the land which is not involved here.

Issues were joined on the complaint by answer in general denial of all the defendants and by special paragraph of answer by Dena and Jacob W. Creviston. In their special answer it was alleged, in substance, that in 1908 said Harry Osterhaus became the owner in fee simple of the real estate in controversy, and that he gave it to appellees, Dena and Jacob W. Creviston; that in pursuance of such gift they moved upon said land, took full and absolute possession thereof and made valuable and lasting improvements thereon by erecting a house and barn, clearing, fencing and ditching the land and by otherwise improving the same, which improvements were of the value of $8,000; that they made said improvements and held possession of the land as the owners thereof, all with the knowledge and consent of said Harry Osterhaus.'

Appellees also filed a cross-complaint in two paragraphs, in the first of which they alleged that they were the owners in fee simple of the real estate and asked to have their title quieted. In the second paragraph, they alleged in substance that Harry Osterhaus, deceased, was in his lifetime the owner of said real estate; that while such owner he agreed verbally with cross-complainants that he would convey and give said real estate to them in consideration of love and affection, and in consideration that they would give him a home and

care for him at such times as he might see fit to make his home with them, which they agreed to do; that pursuant to said agreement and relying thereon, they took possession of said real estate and improved it in substance, as above stated; that they have held the continuous possession thereof as such owners since they entered into the aforesaid agreement with decedent; that they have fully kept and performed all the terms of said agreement by them to be performed; that on February 3, 1913, said Harry Osterhaus died without having conveyed said real estate to them. The prayer is that their title be quieted and that the court appoint a commissioner to execute to them a deed for said real estate.

The judgment in this case was rendered on December 9, 1913; the appeal was taken on May 13, 1914; the transcript was filed in this court on May 27, 1914, and the cause was submitted on June 26, 1914. The original appellant died on June 13, 1914, after the appeal was taken and before the date of submission. On July 25, 1914, a petition was filed in this court asking to substitute Ruth Osterhaus, widow of Harry W. Osterhaus, and Harry Osterhaus, Jr., his son, his only heirs at law, as appellants. Notice was duly served on appellees for August 8, but the order for substitution was not made and entered of record until December 14, 1914. Appellees now ask to have the appeal dismissed on the ground that the assignment of errors has not been amended to correspond with the order of substitution. There is no claim that the appeal is otherwise irregular or defective. The court has jurisdiction of the subject-matter and by the original notice of appeal acquired jurisdiction of appellees. The failure to formally

amend the assignment of errors to correspond with the order of substitution does not vitiate the appeal nor deprive appellees of any right. The order for substitution in legal effect makes the parties named the appellants, and the appellees were duly notified of the fact and are bound by the record without the formal amendment of the assignment. Such amendment would have been proper practice but failure so to do does not afford ground for dismissing the appeal. As affording some light on the question presented we cite: §§677, 678 Burns 1914, §§636, 637 R. S. 1881; §705 Burns 1914, §663 R. S. 1881; *Bruiletts Creek, etc., Co.* v. *Pomatto* (1909), 172 Ind. 288, 88 N. E. 606; *Helms* v. *Cook* (1914), 58 Ind. App. 259, 108 N. E. 147; *City of Decatur* v. *Eady* (1914), — Ind. App. —, 105 N. E. 590.

Objection is urged to appellant's briefs that under the rules of the court no questions are presented for decision. One of the errors assigned is the overruling of appellant's motion for a new trial. The brief is justly subject to some criticism but evidences a good-faith effort and a substantial compliance with the rules sufficient to present the question arising on the motion for a new trial of the alleged insufficiency of the evidence to sustain the verdict. *Palmer* v. *Beall* (1915), 60 Ind. App. 208, 110 N. E. 218.

The point is especially urged that there is no evidence to support the allegation of a parol gift of the land to appellees by the decedent, Harry Osterhaus. In support of this contention appellant says there is no proof whatever that Harry Osterhause ever said to the appellees, or either of them, that he intended to give them the property in question, nor that he ever made any such statement in their presence or hearing, or to any other person

assuming to act as their agent in the matter; that the very basis of any agreement of gift is lacking; that loose declarations of the decedent in casual conversations with disinterested parties that the property belonged to Jacob, or that he intended it for "Jake" and his wife for a home, and similar declarations to or in the hearing of third parties, are insufficient to meet the requirements of the law. Appellant also contends that the evidence is shown to be insufficient because, after appellees had improved the farm and while they were living upon it, an effort was made to borrow money by mortgaging the land, and an error in the description of the property was discovered; that appellees procured a deed from the former owners to correct the mistake and the deed was made to Harry Osterhaus; that the mortgage was afterwards executed for $550 on January 8, 1913. The evidence does show the foregoing in regard to the deed and mortgage, but it also shows that the deed was never delivered to Harry Osterhaus but was procured by appellees; that it was delivered to the attorney for the company that made the loan, and was placed of record by him and afterwards was procured by him and retained in his possession. The evidence also shows that the note was signed by both Osterhaus and Jacob L. Creviston and that the mortgage was executed by them and by Dena Creviston; that Mr. Osterhaus was not present when the loan was made nor when the money was paid, but signed the papers in Cook County, Illinois, and sent them to appellees; that the money was procured by, and turned over to, appellees. The evidence also tends to show that soon after the land was purchased appellees erected a small house on the land, moved into it and cleared, fenced and ditched the land; that later they built a barn, enlarged the house

and made other permanent improvements on the land; that appellees paid all the taxes on the land and have continuously lived upon it since they took possession of it as aforesaid, though the legal title remained in the name of Harry Osterhaus until his death in February, 1913.   The evidence also shows that the decedent, shortly after he bought the land, was asked by one Louis Stuart if he was going to be a farmer and he said, "No"; that the land belonged to Jacob; that he was going back to Chicago; that he might get old some time and "Jake" would "give him a corner to roost in"; also, that he told one John M. Taylor that he intended the thirty acres for "Jake" and his wife for a home; that he did not need a farm but might sometime need a place to stay and expected to stay here with his brother-in-law; that he bought the farm for "Jake" and his wife, and that he wanted a place to stay, if he should get so he could not work, and that he expected to stay there; also, that he inquired about land of Harrison Warpup and said that he wanted to buy a piece of land so his brother-in-law and sister could have a home of their own; that "Jake" was a renter and had been dogged around; that after he bought the thirty acres he told him he had bought it for "Jake".   The evidence also tends to show that decedent was about thirty-five years of age when he died, and that he and appellees were at all times on friendly terms; that the land was not cleared when purchased, and that about twenty acres were cleared by appellees; that the buildings placed on the land were worth about $2,600, and the other improvements were permanent and valuable.

It was agreed by the parties, in substance, that the decedent died intestate on February 3, 1913, leaving as his sole and only heirs at law appellant,

his nephew, and Dena Creviston his sister; that the common source of title claimed by the parties was Uriah Herran, from whom decedent bought the land on January 25, 1908. It is not denied by appellants that a parol gift, or a verbal contract

2. for the sale of land, may be taken out of the operation of the statute of frauds by clear and definite proof of the contract or gift, followed by full possession, use and control of the land. While the parol sale or gift, and the facts relied on to take the case out of the operation of the statute of frauds, must be clearly and definitely estab-

3. lished by satisfactory proof, yet the evidence need not be of any particular kind or class and the ultimate fact of sale or gift, like other material facts, may be inferred from facts and circumstances proven by the evidence, which are sufficient to warrant the court or jury trying the case in inferring such ultimate fact. *Cutsinger* v. *Ballard* (1888), 115 Ind. 93, 96, 17 N. E. 206; *Yost* v. *Dunk* (1914), 57 Ind. App. 151, 106 N. E. 644, 645; *Bevington* v. *Bevington* (1907), 133 Iowa 351, 110 N. W. 840, 9 L. R. A. (N. S.) 508, 513, 12 Ann. Cas. 490; *Flanigan* v. *Waters* (1896), 57 Kan. 18, 21, 45 Pac. 56.

Where a parol gift of land has been accepted by the donee, and possession has been taken in pursuance of such gift, and permanent and

4. valuable improvements have been made upon the land by the donee, and there are no unperformed obligations or conditions relating thereto resting upon such donee, he is the equitable owner of the land, though the legal title may still be in the donor, and as such equitable owner he may enforce specific performance of an agreement to convey, or may quiet his title to the land. *Horner* v. *McConnell* (1901), 158 Ind. 280, 284, 63 N. E.

472; *Horner* v. *Clark* (1901), 27 Ind. App. 6, 9, 60 N. E. 732; *Starkey* v. *Starkey* (1894), 136 Ind. 349, 355, 36 N. E. 287; *Puterbaugh* v. *Puterbaugh* (1892), 131 Ind. 288, 291, 30 N. E. 519, 15 L. R. A. 341; *Drum* v. *Stevens* (1884), 94 Ind. 181, 183; *Barnes* v. *Union School Tp.* (1883), 91 Ind. 301, 304; *Burns* v. *Fox* (1888), 113 Ind. 205, 207, 14 N. E. 541.

In *Horner* v. *McConnell, supra,* our Supreme Court says: "Equity protects a parol gift of lands equally as it does a parol agreement or contract to sell, provided such agreement is accompanied by possession thereunder, and the further fact appearing that the donee, induced by the promise or agreement of the donor to give, has made valuable and lasting improvements on the premises." In this case the fact of appellees' possession is not disputed. Neither is the fact that valuable improvements were made by appellees, although there is some controversy about who paid for them. There is evidence tending to support appellees' contention on the point and this is sufficient here, though there may be conflicting testimony. The evidence tends to show that the decedent said he intended to buy a farm for appellees and after he bought it, and they were in possession of it, he said it was their farm. These and the other facts and circumstances shown by the evidence were sufficient to warrant the jury in inferring the fact of an absolute gift to appellees.

The evidence sustains the verdict. No intervening error has been presented which warrants a reversal of the judgment. The case seems to have been fairly tried and a correct result reached.

Judgment affirmed.

NOTE.—Reported in 111 N. E. 634. Specific performance, right to, as established by part performance, 53 Am. Dec. 539, 541; 36 Cyc 653, 681. Parol gift of real estate, evidence necessary to establish, 9 L. R. A. (N. S.) 508; 20 Cyc 1222; 21 Ann. Cas. 289.